# The United States, plaintiff, *vs.* Richard Everest, defendant.

## *Certiorari to Henry.*

A private prosecutor on an indictment for larceny, is not an incompetent witness, although the money alleged to have been stolen belonged to the prosecuting witness, and upon a conviction of the thief, would be entitled to recover from him double the amount stolen, and liable for the costs if the accused should be acquitted.

H. T. REID, district prosecutor, comes and says, there is manifest error in the record and proceedings in this, to wit:

1. Because the court below refused to allow the testimony of Alexander McClintock, whose name was indorsed on the indictment as private prosecutor, to be given to the jury on the part of the prosecution.

2. Because the court refused to allow the testimony of Alexander McClintock, to whom the money charged in the indictment to have been stolen belonged, to go to the jury on the part of the prosecution.

J. C. HALL, Esq., attorney for Richard Everest, defendant :

The defendant contends that McClintock's interest excludes him from being a witness. The interest is created by the statute. The statute gives the person from whom the goods or property is stolen double value if he convict, and if he does not, punishes him with the costs. It is a reward for perjury—a species of policy that can have no favor from the court. In England, from whence we derive our law, there is a kind of state policy, and means not sanctioned by either humanity or justice, often resorted to, in order to sustain that policy. On the contrary our courts have always been tender of the accused, and will be slow to sanction a principle that can by possibility be used by the corrupt to convict the innocent.

H. T. Reid, for the U. S.—In reply to the argument on the part of the defence, it is urged on the part of the prosecution, that the same policy exists in this country in relation to the admission of the testimony of a prosecuting witness, which has so long prevailed in England ; and that the reasons upon which that policy is founded applies with equal force in this country, as the protection of property and the morals of the community are of as much importance in a republic as they can be in a monarchy.

All the English authorities are with the prosecution, and if there are any American decisions to the contrary, they have not been produced, and we think such cannot be found. So far have the courts gone in this country, that even the party to a forged instrument has been held admissable as a witness. See 3 Mass. 82; 6 Cowen, 27 ; 2 New Hampshire, 480 ; 2 Dallas, 239 ; 3 McCord, 442 ; see Greenleaf's new work on evidence, page 406.

PER CURIAM, WILSON, JUSTICE.—Everest was indicted in the court below for larceny, in stealing the goods and chattles of Alexander McClintock, who was endorsed upon the indictment as private prosecutor. The defendant pleaded not guilty ; and upon the trial in the court below, McClintock, the private prosecutor was produced, sworn, and offered as a witness by the district prosecutor, to which the defendant objected :

" 1. Because the name of said witness was endorsed on said indictment as private prosecutor.

" 2. Because the money in the said indictment, charged to have been stolen, is charged to have belonged at the time it was stolen to the said witness. "

Which objections were sustained by the court, and the testimony of said witness excluded. The excluding the testimony by the court for these two reasons, are the errors assigned, and the sufficiency of these grounds is submitted to this court. Does the fact that the witness is the private prosecutor exclude his testimony? The private prosecutor is not necessarily bound for the costs, in the event of the acquittal of the defendant on the trial. The last statute enacted on this subject, and the one by which we are governed, provides: "When any prosecution, instituted in the name of the United States, or of individuals, for breaking any laws of this territory, shall fail, the judge shall determine from the circumstances of the case, whether the prosecutor, the county, or the territory, shall pay the costs." Statutes, Vol. 1st act concerning costs, sec. 19. But if he were liable for the costs, that fact should go the credibility, and not to the competency, of the witness; and so says the great current of authorities.

In reference to the second objection, the statute enacts, "If any person or persons shall steal from any other person or persons; or from the dwelling house, or other houses; or from any boat or water craft of any person or persons, any money, goods, wares or merchandise, or any other personal property or thing whatsoever, he, she, or they, so offending, shall be deemed guilty of larceny, and, upon conviction thereof, shall for the first offence, restore to the owner, the thing or things stolen, and pay to him the value thereof; and if the thing stolen be not restored, shall pay to him, her or them, double the value thereof, and shall be fined in any sum not exceeding double the value of the thing stolen, and shall be imprisoned for a term, not exceeding five years, nor less than one year." Statutes, Vol. 1, act defining crimes, sec. 35.

It is now well settled, that this also, from the necessity of the case, must go to the credibility, and not to the competency, of the witness.

The Supreme Court of Illinois, in the case of Noble vs. The People, (Breese's Rep., page 29,) hold as follows:

"From necessity and public policy, the person on whom a forgery is committed must be admitted to prove it; although our statute gives such person one half of the judgment so recovered against the accused. If this were not the law forgeries would go unpunished. This interest must be left to his credit."

We see no such distinction between this case and a case of forgery, as would admit the witness in one case and exclude him in the other. If forgeries might go unpunished, unless the injured party were admitted, so also might cases of larceny and robbery, where the person in-

jured could alone testify to the circumstances.   In the case of the commonwealth vs. Moulton, 9th Mass. Rep. 30, it was decided that "one from whom goods had been stolen, is a competent witness on the trial of the thief, although he is entitled by statute to satisfaction from the future earnings of the convict, and a recompense from the public treasury for the expense of prosecution." A person entitled to a reward upon the conviction of the defendant, is not thereby rendered incompetent to give evidence against him, Rex vs. Muscot, 10 Mod., 193. Whether the reward be given by statute, by proclamation, or by a private person. 1st Phil. Ev. 119, 127.

The prosecutor is in all cases to prove the offence.   Peakes Ev. 153, 155.   See Gilb. Ev. 123, even although he entitle himself to the restoration of his goods upon the conviction, or entitles him to costs by the conviction.

The judgment below is reversed.

MASON, CHIEF JUSTICE, DISSENTING.—The question we are now called upon to decide is whether, in the trial below, Alexander McClintock was a competent witness for the prosecution.   His name had been endorsed on the indictment as private prosecutor, which rendered him liable for the costs of the prosecution, in case of an acquittal.   He was, besides, the owner of the money alleged to have been stolen.   A conviction would have entitled him to receive from the defendant double that amount, which in this case would have made up a sum of more than five hundred dollars.   He had therefore a double pecuniary motive to swear against the accused as strongly as possible.   If either or both of these are sufficient to exclude his testimony, the decision below was correct—otherwise not.

In civil cases the smallest amount of direct pecuniary interest in the result is sufficient to disqualify a witness, and the same doctrine, as a general rule, applies in criminal cases.   "Thus in cases of summary convictions, where a penalty is imposed by statute, and the whole or a part is given to the informer or prosecutor, who becomes forthwith entitled to it upon the conviction, he is not at the common law a competent witness for the prosecution.   So in a prosecution under the statutes for a forcible entry and detainer, where the party injured is entitled to an award of immediate restitution of the lands, he is not a competent witness.   This rule however is subject to many exceptions, which will hereafter be stated.   But it may be proper here to remark, that in general *where the penalty or provision for restitution is evidently intro-*

27

*duced for the sake of the party injured rather than to ensure the detection and punishment of the offender, the party is held incompetent.*" 1 Greenleaf's Evidence, 448.

Now, it seems to me that the decision in the District Court was in perfect accordance with the rule here laid down. The penalty or provision for restitution in this case was evidently " introduced for the sake of the party injured rather than to ensure the detection and punishment of the offender, " unless indeed, we suppose the weight of the inducement would increase the strength of the witness's testimony. Such a motive, however, cannot be attributed to the legislature, and if such a result *is* to be produced from this cause, it certainly furnishes no argument in favor of the competency of the witness. As well might subornation of perjury be directly and openly resorted to for the purpose of securing a conviction.

The case at bar is parallel also with the examples given in the above quotation. If, where the whole or part of the penalty is given to the prosecutor in *qui tam* actions, he is incompetent, why should he not be so, also, in the present case, where on the one hand he is to receive double the amount of money, which perhaps, by his own oath the defendant may be convicted of having stolen; and on the other is threatened with a bill of costs of perhaps a greater amount, if the defendant is acquitted. And if the restitution of lands is sufficient to destroy the competency of the prosecutor, it is difficult for me to perceive why the restitution of stolen money should not have a like effect—*a fortiori*, when double the amount stolen is to be restored.

On the other hand there are many decisions which seem in conflict with those above mentioned, and some of them really are so, but most of them can be easily reconciled with that of the court below. Where the government offers a reward for the conviction of offenders, the person who will be entitled to this contingent reward is still a competent witness. But this is in strict accordance with the rule above quoted from Greenleaf. The object of the reward in this case is to ensure the detection and punishment of the offender, rather than as a favor or compensation to the witness. The intention of the legislature in offering the reward would be frustrated if the evidence of the main witness in the case were thus to be declared inadmissible.

It is also evident that rewards offered by private individuals cannot render one incompetent, for otherwise the friends of the accused might readily shut the mouths of all the witnesses for the prosecution.

Witnesses are also clearly competent to whom pardons or exemptions

from prosecution are offered by statute, on condition of their giving such testimony as to convict their accomplices. The rules of evidence are all under the control of the legislature, but the question before the court is, what shall be the rule where the legislature have not directly expressed their will on the subject.

In cases of forgery, the English doctrine was to exclude the person whose name was alleged to have been forged, and this continued to be the case until changed by statute. A different rule has in general been followed in this country, and with great propriety; for the record of conviction will not be evidence in a civil suit against the witness on the forged instrument, and although such conviction would operate strongly in his favor this is a circumstance that should only go to his credibility.

But there are decisions, I am well aware, to the effect that the competency of a witness in a criminal prosecution may not be destroyed, although he may have a direct pecuniary interest in the result of the trial, and although that interest is created by law for the sake of that very witness, rather than to secure the detection and punishment of the offender. Thus, the Supreme Court of Illinois have declared the person whose name has been forged, a competent witness, although he were to receive a pecuniary compensation immediately dependant upon the conviction of the offender, and there are some other decisions involving a similar principle. I cannot, however, find that such decisions have become so generally acquiesced in as to become the established law, and from the fact that a different rule has been laid down in the most recent work on evidence, and that too by an American author, I am inclined to doubt whether such is really the weight of authority in this country. See Greenleaf's evidence above quoted.

Where authorities are thus discordant, we should resort to principle by which to guide our decision. In fact it seems to me that reason should in such cases be appealed to in the first instance, relying upon authority to direct us, only where our natural guide becomes incompetent. To bow blindly to any decisions, however respectable, is to subject ourselves to the risk of misapplying those decisions, of improperly engrafting them upon statutes different from those to which they naturally apply, and at all events of keeping alive abuses and absurdities which such a course will inevitably create and perpetuate in any branch of science. Frequently, at all events we should, in nautical language, "*take an observation*" to determine by the fixed and unvarying lights above whether some uncalculated current of authorities is not drifting us from the great object we are endeavoring to reach—the administra-

tion of justice. This is more particularly important when we are founding a judicial system for an independent community. The decisions of other courts should be treated with high respect, but they should be regarded in the light of wise counsellors rather than that of arbitrary sovereigns.

Bringing this question then to the test of principle, what will be the result? One of the best settled principles of our jurisprudence is, that no person is a competent witness in a cause in the result of which he has a direct pecuniary interest; and although it may be questionable whether this rule in all its strictness has a salutary operation in civil suits, there is no doubt of its wisdom and justice in criminal prosecutions. Where the character and liberty of an American citizen is at stake, testimony of a suspicious character should never be resorted to for the purpose of conviction. Where a man's coat is the subject of a suit at law we exclude a witness who has the slightest interest in the result of the trial, but where his whole body, his very life abide such result, it is said we should not object to the competency of the witness, who by a false oath may entitle himself to the whole fortune of the accused. Heirs have murdered their ancestors for the sake of the inheritance. Doubtless, if an opportunity had offered, they would have sworn him into the penitentiary with a like motive. That is a most dangerous law which enables a stranger, by his own turpitude, to become the heir of the accused and secures him the immediate inheritance.

But it is said this course is resorted to from motives of public policy, and from the necessity of the case. If it is so necessary to secure a victim he might perhaps be sentenced without the forms of a trial! But this is not the case. The law calls for no such sacrifice. Its highest, noblest, most favorite exercise is the protection of the innocent. It asks for the punishment of none but those who are clearly guilty. It condemns reluctantly and only when the evidence is strong, unequivocal, uncontaminated. It should listen to none that is not strictly credible. Hired informers, witnesses employed to swear by the job, are wholly incompatible with that system of law and liberty which it was the design of the revolution to establish.

It is true that if the owner of stolen property is excluded from being a witness, cases would arise in which offenders would on that account escape deserved punishment, but even that is far better than punishing the innocent. Shall we for fear of such a failure to convict, break through a most salutary principle? It is not *our* business to make

laws for preventing the guilty from escaping. Where there is a strong necessity arising out of the nature of things we should be justified in establishing such an exception to any general rule of evidence as to further the ends of justice. But such is not the case here. "The necessity of the case," if any such exists, arises wholly out of the act of the legislature. What necessity was there for giving the owner of the stolen property a double compensation, or even any compensation at all as the direct result of a conviction. If he had been left to obtain satisfaction for his private injury in the same way as in the case of an ordinary trespass he would have been a competent witness in the trial for larceny. By uniting the two proceedings it would be charitable and just to presume that the legislature intended to exclude the owner of the property as a witness altogether, rather than that they meant to give him an opportunity to swear money into his own pocket, if he would so shape his testimony as to murder the reputation of the accused, and consign his body to the penitentiary. Whether such a law was wise or politic, this is not the proper place to enquire, nor are we the proper tribunal to decide. Our duty is to carry out the spirit and intention of the legislature by the application of the general principles of law; not to create exceptions to a salutary rule of evidence for the purpose curing, what may seem to us, defective legislation.

It is not difficult to perceive that the establishment of the rule allowing the owner of the stolen goods to be a competent witness, may lead to very great injustice. If there is any reason for excluding an interested witness in a civil case, that reason operates with infinitely more force in criminal prosecutions. It is sometimes difficult to determine whether an act is a simple trespass or a downright larceny. If the transgressor is proceeded against as a mere trespasser, the owner cannot be a witness. The rule therefore holds out a very strong inducement to him to institute a criminal proceeding and follow it up by such an oath as will entitle him to a double compensation.

How often, by the force of accidental circumstances, do the strongest suspicions of guilt rest upon an individual wholly innocent. In such a case allow the party injuired to become a witness, with the double motive of obtaining a pecuniary benefit on the one hand, and avoiding a bill of costs on the other, and suspicion will very probably be changed to conviction.

But this rule furnishes opportunities for plans to be laid by the crafty and unprincipled for the very purpose of entrapping the simple and unsuspecting. An article of property may be loaned with the formed

design of charging the borrower with theft, and obtaining the double compensation. Foreigners and other strangers often arrive in this territory with considerable sums of money. An unknown wretch, ascertaining the exact amount and description of the prey which the law has kindly placed within his reach, has the astonished owner arrested—charges him with theft—consummates his villainy with perjury, which consigns his victim to the penitentiary, and then seizes upon his spoils, the officers of the law in the mean time aiding him in his infamous purpose.

Cases like these may never occur—neither might any failure of justice result from enforcing the rule which excludes all interested witnesses. Either of these evils are, however, liable to be experienced according as that rule is enforced or rejected. Against which is it most important to guard? It will be said that those of the latter class are much more likely to occur than those of the former, but do the respective probabilities present an inequality of ninety-nine to one, the ratio which the humanity of the law establishes in favor of innocence.

This is the train of reasoning which gave rise to the decision below, which has now been reversed by this court. All the arguments I have since heard have been insufficient to change the opinion then formed. I therefore feel compelled to dissent from the opinion of the Supreme Court, and have concluded in this manner to set forth the reasons of that dissent.